UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUDSON SPECIALTY INSURANCE COMPANY

                              Petitioner,

– against –

NEW JERSEY TRANSIT CORPORATION,

                              Respondent.

**OPINION AND ORDER**

15-cv-89 (ER)

Ramos, D.J.:

      The instant dispute concerns the validity of an arbitration clause in a property insurance policy ("the Policy") issued by Hudson Specialty Insurance Company ("Hudson") to New Jersey Transit Corporation ("N.J. Transit"). As a result of Hurricane Sandy, N.J. Transit incurred damages to its facilities and equipment, prompting it to bring an action against Hudson in New Jersey state court to address the parties' dispute over the amount of coverage that it is entitled to. Hudson presently seeks an order to compel arbitration of the claims asserted in the state court action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. For the reasons discussed below, the petition is GRANTED.

    **I.   Background**

      In May 2012, N.J. Transit commenced the process of purchasing property insurance coverage for the 2012-2013 policy year through its broker, Marsh & McLennan ("Marsh"). Resp't's Mem. L. Opp., Doc. 12 at 3. N.J. Transit claims that Marsh drafted and negotiated the "common form" of the Policy, which did not include an arbitration or service of suit provision. *Id*. at 3-4. N.J. Transit maintains that it did not see the arbitration clause until Hudson issued the full text of the Policy on June 29, 2012. *Id*. at 4. Hurricane Sandy struck the New Jersey coast

on October 29, 2012, during which time the Policy was in place. *Id*. at 6. The storm damaged N.J. Transit's facilities and equipment and prompted it to seek coverage for its losses from Hudson, along with its other insurers. *Id*.

On October 1, 2014, N.J. Transit filed an action in New Jersey state court against Hudson and several other insurers, seeking declaratory relief and anticipatory breach of contract. *Id*., *see also* Lee Decl., Doc. 4, Ex. B. N.J. Transit's state court action centers on the parties' dispute over the interpretation of the Policy's "Flood Sublimit," "Flood," and "Named Windstorm" provisions. Pet. Compel Arb. ¶ 12. The "Flood Sublimit" provision states that Hudson shall not be liable for any flood damage above $100 million.[1] Lee Decl., Doc. 4, Ex. A at ¶ 2. The Policy defines a "Flood" as "a temporary condition of partial or complete inundation of normally dry land" resulting from one of three occurrences: (1) "[t]he overflow of inland or tidal waters outside the normal watercourse or natural boundaries[;]" (2) [t]he overflow, release, rising, back-up, runoff or surge of surface water;" or (3) "the unusual or rapid accumulation or runoff of surface water from any source." *Id*. at ¶ 12(A). N.J. Transit argues that the "Flood Sublimit" is inapplicable to the losses at issue due to a separate provision, which defines a "Named

---

[1] The applicable provision states:

> The following sublimits are 100% per occurrence ground-up sublimits. We [Hudson] shall not be liable for more than our proportional share of the following sublimits (aggregate where applicable) which are part of, and not in addition to the limit of liability. [. . .]
>
> B. $100,000,000 per occurrence and in the aggregate in any one policy year as respects losses caused by flood.

Lee Decl., Doc. 4, Ex. A at ¶ 2.

Windstorm."[2]  Pet. Compel Arb. ¶ 14.  Hudson holds the view that the "Flood Sublimit" clause applies regardless of the "Flood" and "Named Windstorm" provisions.  *Id.* at ¶ 16.

On January 7, 2015, Hudson filed the instant petition to compel arbitration.  Hudson bases its application on the Policy's arbitration endorsement, which states:

> If there is any dispute or disagreement as to the interpretation of the terms and conditions of this policy or the development, adjustment, and/or payment of any claim, they shall be submitted to the decision of a Joint Arbitrator that the Insured and Company shall appoint jointly.
>
> If there is no agreement on the selection of the Joint Arbitrator within a period of 30 days after the decision is made, the Insured and the Company shall each appoint their Representative Arbitrators in writing within 10 days, who shall rule in a joint decision 15 days after they are summoned.
>
> In the event the Representative Arbitrators do not agree, they shall inform the contracting parties in writing of their appointment of a Tie-Breaking Arbitrator, who must be accepted before any judicial action is proposed.
>
> The Tie-Breaking Arbitrator shall chair the meetings he or she considers necessary with the two disagreeing Representative Arbitrators.

---

[2] Hudson indicates that the applicable "Named Windstorm" provision states:

> Named windstorm shall mean direct action of wind including ensuing storm surge when such wind/storm surge is associated with, or occurs in conjunction with a storm or weather disturbance which is named by the National Oceanic Atmospheric Administration's (NOAA) National Hurricane Center or similar body until sustained wind speeds drop below the parameter for naming storms.
>
> Storm surge is defined as water driven inland from coastal waters by high winds and low atmospheric pressure.

Pet. Compel Arb. ¶ 11.  The Court notes that this is the language cited in N.J. Transit's state court complaint, *see* Lee Decl., Doc. 4, Ex. B at ¶ 36, however, it is not identical to the corresponding provision contained in the copy of the Policy that Hudson provided the Court.  Regardless, the language of this provision is not relevant for the purposes of the petition to compel arbitration.

Lee Decl., Doc. 4, Ex. A at 44.[3]  N.J. Transit filed its opposing papers on February 4, 2015.  *See* Doc. 12.  It relies mainly on another endorsement contained in the Policy, entitled "Service of Suit":

> In the event of a failure by the Company to pay any amount claimed to be due under this policy, the Company will, at the Named Insured's request, submit to the jurisdiction of any court of competent jurisdiction with the United States of America and will comply with all requirements necessary to give the court jurisdiction. [. . .] **All Other Terms and Conditions of This Policy Remain Unchanged.**

Lee Decl., Doc. 4, Ex. A at 45 (emphasis in original).

## II.  Legal Standard

Section 4 of the Federal Arbitration Act (the "FAA" or the "Act") requires courts to compel arbitration in accordance with the terms of an arbitration agreement, upon the motion of either party to the agreement, provided that there is no issue regarding its creation.  *AT&T Mobility LLC v. Concepcion*, -- U.S. --, 131 S. Ct. 1740, 1748 (2011) (citing 9 U.S.C. § 4).  "In the absence of an agreement by the parties to submit the matter of arbitrability to the arbitrator, the question of whether or not a dispute is arbitrable is one for the court."  *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011).  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Atlantica Holdings, Inc. v. BTA Bank JSC*, No. 13-CV-5790 (JMF), 2015 WL 144165, at *6 (S.D.N.Y. Jan. 12, 2015) (internal quotation marks and citation omitted) (emphasis in original).

---

[3] Several provisions of the Policy are unnumbered, including the arbitration and service of suit endorsements.  Therefore, the Court cites to the ECF page numbers when referring to these provisions.

When assessing the validity of an arbitration agreement, "the general rule is that courts should apply ordinary state-law principles that govern the formation of contracts." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344 (2d Cir. 2010) (internal quotation marks and citation omitted). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (citations omitted). Whether it argues that arbitration is improper because "the arbitration agreement is invalid under a defense to contract formation," or asserts that "the arbitration contract does not encompass the claims at issue," either way, the resisting party shoulders the burden of proving its defense. *Kulig v. Midland Funding, LLC*, No. 13 Civ. 4715 (PKC), 2013 WL 6017444, at *2 (S.D.N.Y. Nov. 13, 2013).

Moreover, "federal policy strongly favors arbitration as an alternative dispute resolution process," thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and "[f]ederal policy requires [courts] to construe arbitration clauses as broadly as possible." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (internal citations and quotation marks omitted); *see also, e.g.*, *Champion Auto Sales, LLC v. Polaris Sales Inc.*, 943 F. Supp. 2d 346, 351 (E.D.N.Y. 2013) ("In keeping with this policy, the Court resolves doubts in favor of arbitration and enforces privately-negotiated arbitration agreements in accordance with their terms."). "[U]nless it may be said with positive assurance" that the arbitration clause does not cover the disputed issue, the court must compel arbitration. *Id*. (quoting *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250 (2d Cir. 1991)).

Despite the federal policy favoring arbitration, however, courts only apply the "presumption of arbitrability" if an "*enforceable* arbitration agreement is ambiguous about

5

whether it covers the dispute at hand." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (emphasis added); *see also Allstate Ins. Co. v. Mun*, 751 F.3d 94, 97 (2d Cir. 2014). Put differently, although "doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014) (quoting *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011)). "It is the court's duty to interpret and construe an arbitration provision, but only where a contract is 'validly formed' and 'legally enforceable.'" *Kulig*, 2013 WL 6017444, at *2 (citations omitted).

### III. Discussion

#### A. Validity of the Arbitration Clause

In deciding a motion to compel arbitration, the inquiry is "two-fold;" the Court must decide "whether the parties agreed to arbitrate, and, if so, whether the scope of that agreement encompasses the asserted claims." *Threlkeld*, 923 F.2d at 249 (citing *Fleck v. E.F. Hutton Grp., Inc.*, 891 F.2d 1047, 1050 (2d Cir. 1989)). For purposes of this motion, there is no dispute as to the second question—whether the dispute falls within the scope of the arbitration clause.[4] Therefore, the Court is focused on the question of whether the parties agreed to arbitrate.

N.J. Transit argues that the Court should not enforce the Policy's arbitration provision because it never agreed to it. Doc. 12 at 18. The basis for this contention is that N.J. Transit was

---

[4] By its own terms, the arbitration endorsement covers "any dispute or disagreement as to the interpretation of the terms and conditions of this policy or the . . . payment of any claim." Lee Decl., Doc. 4, Ex. A at 44. The dispute clearly relates to a disagreement about the payment of a claim, in addition to implicating the interpretation of several terms under the Policy. *See* Pet'r's Mem. L. Supp. Mot. Compel. Arb., Doc. 2 at 11; Doc. 12 at 6. In its state court complaint, N.J. Transit seeks a declaratory judgment that Hurricane Sandy qualifies as a "Named Windstorm" and that the flood sublimit provision therefore does not apply. Lee Decl., Doc. 4, Ex. B at ¶ 61.

not provided with the arbitration clause—which Hudson drafted—until the Policy was issued on June 29, 2012. *Id*. at 1, 4. "Whether or not the parties have agreed to arbitrate is a question of state contract law." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) (citations omitted). Under New York law, the starting presumption is that contracts are legal and enforceable.[5] *See, e.g.*, *Brum v. City of Niagara Falls*, 145 A.D.2d 928, 535 N.Y.S.2d 856 (App. Div. 4th Dep't 1988). Furthermore, "there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Rensselaer Polytechnic Inst. v. Varian, Inc.*, 340 F. App'x 747, 749 (2d Cir. 2009) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)) (internal quotation marks omitted). "The manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which *evinces the intention of the parties to contract*." *Register*, 356 F.3d at 427 (quoting *Maffea v. Ippolito*, 247 A.D.2d 366, 367, 668 N.Y.S.2d 653, 654 (1998)). As consistent with the FAA, the party challenging the agreement bears the burden of proving its invalidity. *See, e.g.*, *Barbieri v. K-Sea Transp. Corp.*, 566 F. Supp. 2d 187, 192 (E.D.N.Y. 2008) (party challenging arbitration agreement bears burden of proof).

N.J. Transit's own papers undercut any suggestion that it was unaware of the arbitration clause. On June 15, 2012, Jason Mitchell ("Mitchell"), on behalf of Commonwealth Specialty—Hudson's underwriter—submitted a quote to Nicholas Trent ("Trent") of Marsh. Frenchman

---

[5] In its papers, Hudson cites New York state law. *See* Doc. 2 at 8. Indeed, the arbitration clause states that the Policy "shall be interpreted solely according to the law of the State of New York." Lee Decl., Doc. 4, Ex. A at 44. N.J. Transit maintains that it never negotiated or agreed to this portion of the arbitration clause. Doc. 12 at 7 n.1. It points out that a separate endorsement in the Policy states that "[a]ny dispute concerning the interpretation of the terms, conditions, limitations and/or exclusions contained herein is . . . subject to the Law of the State of New Jersey." Lee Decl., Doc. 4, Ex. A at 35. However, N.J. Transit states that it "does not believe that choice of law is at issue in Hudson's Petition," even though it reserves the right to contest the "Law and Jurisdiction" portion of the arbitration clause. *Id*. Since N.J. Transit did not brief the issue or raise any objections beyond the footnote that contains this argument, the Court will apply New York state contract law, where applicable.

Decl., Doc. 13, Ex. A. This quote explicitly referenced the inclusion of an arbitration endorsement. *See id.* at MARSH-NJT0006307. Two weeks later, on June 29, 2012, Trent contacted Mitchell via email, stating "[t]he client has authorized us to instruct you to bind your participation based on the terms and conditions of your quote dated 6/15/2012 and the subsequent correspondence reflected in the attached policy for the July 1, 2012-2013 property program." Frenchman Decl., Doc. 13, Ex. B at MARSH-NJT0008556. Mitchell responded to Trent's message later on June 29, 2012, indicating that the signed policy wording was attached to the email and advising Trent to let him know if he had any questions. *Id.* at MARSH-NJT0008556. Nowhere in the chain of email exchanges between Mitchell and Trent spanning from June 26 and June 29, which N.J. Transit attached as exhibits, did Trent ever object to the inclusion of an arbitration clause.[6] *See* Frenchman Decl., Doc. 13, Ex. B. Nor does N.J. Transit indicate that it objected to the arbitration clause after the Policy was issued.[7]

The Restatement (Second) of Contracts, which reflects the law of New York,[8] provides that silence and inaction may operate as acceptance where the "offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were

---

[6] Neither Hudson nor N.J. Transit provided the Court with any communications that may have taken place among the parties and their representatives between the time Hudson issued its quote on June 15, 2012 and June 26, 2012.

[7] Hudson claims that N.J. Transit raised the argument that it did not agree to the arbitration clause for the first time in its opposition papers. Pet'r's Reply Mem. L, Doc. 16 at 1.

[8] Even if the Court were to apply New Jersey law, the outcome would be the same. New Jersey courts have also embraced this portion of the Restatement of Contracts. *See e.g. Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 436, 608 A.2d 280, 284 (1992) ("Silence does not ordinarily manifest assent, but the relationships between the parties or other circumstances may justify the offeror's expecting a reply and, therefore, assuming that silence indicates assent to the proposal.").

offered with the expectation of compensation." Restatement (Second) of Contracts § 69(1)(a); *see also Nirvana Int'l, Inc. v. ADT Sec. Servs., Inc.*, 525 F. App'x 12, 14 (2d Cir. 2013) ("[The plaintiff's] failure to object and its acceptance of the contract's benefit together manifest an implied agreement to the terms on the unsigned last page that is sufficient to bind [the plaintiff] to the limitation of liability provision.") Here, it was reasonable for the offeror, i.e. Hudson, to assume that N.J. Transit's failure to object to the arbitration clause constituted assent— particularly given the fact that Mitchell invited Trent to contact him if he had any questions. Yet, N.J. Transit now claims that it is relying on a previous draft of the Policy which was not the one that was actually issued. N.J. Transit cannot have it both ways—either it manifested its assent to the Policy as issued on June 29, 2012, or there is no mutually-agreed to contract for insurance at all. N.J. Transit is clearly seeking to benefit from the Policy by demanding coverage for its losses after Hurricane Sandy and has thus manifested its assent.

To the extent that N.J. Transit is arguing that the arbitration clause is unenforceable because it was not aware that one existed, "a party who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (internal quotation marks and citation omitted); *see also Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014). ("[A] signer's duty to read and understand that which it signed is not diminished merely because [the signer] was provided with only a signature page.") (internal quotation marks and citation omitted) (alterations in original). Although contracts against public policy are void, *Providence Tool Co. v. Norris*, 69 U.S. 45, 48 (1864); *Szerdahelyi v. Harris*, 67 N.Y.2d 42, 48, 490 N.E.2d 517 (N.Y. 1986), Plaintiff does not invoke any legal doctrines which would justify nullifying the

arbitration provision at issue, such as fraud, duress, coercion, or misrepresentation.  *Marciano*, 14 F. Supp. 3d at 331.

Therefore, the Court concludes that the arbitration provision is part of an enforceable contract to which the parties manifested their intent to be bound.

## B. Effect of the Service of Suit Provision

N.J. Transit argues that the Policy's arbitration provision conflicts with the service of suit endorsement, and that the resulting ambiguity should be resolved by denying the petition to compel arbitration.  Doc. 12 at 8-12.  Hudson, in turn, contends that the arbitration and service of suit provisions are complementary.  Pet'r's Reply Mem. L., Doc. 16 at 6.  In their view, the arbitration clause covers this dispute and the service of suit provision exists in case a party chooses to compel arbitration, enforce an arbitration award, or opt out of arbitration altogether.  *Id*. at 7.

Hudson has the better of the argument.  In *Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd*., 79 F.3d 295 (2d Cir. 1996), the Second Circuit reconciled an analogous set of contract provisions in the manner suggested by Hudson.  The case involved a dispute between a mutual association of ship owners providing marine protection and indemnity insurance and one of its members.  *Id*. at 296.  The member was subject to the association's rule book, which provided a mandatory procedure for the settlement of disputes.  *Id*.  First, the dispute would be referred to and adjudicated by the "Directors," and later to arbitration if the member did not accept the Directors' decision.  *Id*. at 296-297.  Yet, the mutual association separately issued the member a certificate confirming the terms of coverage and obligating the association to appear in any civil action brought by a member in the Southern District of New York "to recover for any loss or claim payable or alleged to be payable by the Association under the contract of insurance described in this Certificate."  *Id*. at 297.  Pursuant to this provision,

10

referred to as the "New York Suable Clause," the mutual association sought confirmation of an arbitral award denying the member coverage. *Id*. The Second Circuit rejected the member's argument that the New York Suable Clause conflicted with and superseded the arbitration provision contained in the rule book. *Id*. at 298. Rather, it concluded that the New York Suable Clause "is a standard compulsory appearance provision commonly incorporated into such contracts to enable parties to enforce an arbitral award . . . or to compel arbitration." *Id*. (internal citations omitted). Specifically, it relied on "its clear statement that it shall not change the contractual or other substantive rights and obligations of the Association or of the Member." *Id*. (internal quotation marks and citation omitted).

Although they are not identical, the contract terms at issue in the present action are sufficiently analogous to justify the application of *Montauk*'s reasoning. Here, the Policy contains both a service of suit clause in which Hudson agreed to "submit to the jurisdiction of any court of competent jurisdiction" in the event of its failure to pay, along with an arbitration provision. Lee Decl., Doc. 4, Ex, A at 44-45. The Service of Suit clause, like the provision in *Montauk*, emphasizes—in bold—that all of the other Policy's terms and conditions remain unchanged.[9] *Id.* at 45. N.J. Transit correctly observes that the arbitration provision in *Montauk* expressly provided that members were not entitled to maintain any action against the mutual association until after the matter was referred to arbitration. Doc. 12 at 12. However, contrary to

---

[9] N.J. Transit points out that its insurance policy from the previous year contained a service of suit clause with clearer language, stating "[n]othing in this clause affects or changes the Company's rights to demand and enforce arbitration under any Arbitration Clause Endorsement which may be attached to this Policy." Doc. 12 at 10. It argues that the removal of this language is significant. However, its previous policy was provided by a separate entity, Commonwealth Insurance Company ("Commonwealth"). *See* Frenchman Decl., Doc. 13, Ex. C. Although N.J. Transit describes Commonwealth as a Hudson "affiliate," that does not compel the inference that Hudson purposefully replaced the language to convey a different meaning. Moreover, if anything, the language in the previous policy supports Hudson's interpretation of the service of suit endorsement in the current Policy.

what N.J. Transit's represent, the Second Circuit did not rely on this language in reaching its outcome.  Nor does the different posture of *Montauk* disturb the Second Circuit's determination that the "principle effect" of the service of suit clause "is to resolve the issue of personal jurisdiction."  *Montauk*, 79 F.3d at 298.

Meanwhile, the two cases N.J. Transit relies on—one from the Missouri Court of Appeals, and another from the District of Utah—are not binding or persuasive.  Doc. 12 at 9-10.  Trial courts within *this* district have held that, under the principles of contractual construction, they are "obliged" to read arbitration and service of suit clauses "in harmony, rather than in conflict with each other[.]"[10]  *Ideal Mut. Ins. Co. v. Phoenix Greek Ins. Co*., No. 83 CIV. 4687-(CSH), 1984 WL 602, at *2 (S.D.N.Y. July 3, 1984).  In doing so, the logical interpretation of both provisions taken together is that "the service of suit clauses cannot be read to constitute a waiver of the broad arbitration clauses."  *Id*.  Rather, "[t]he service of suit clause is therefore designed to guarantee the enforcement of arbitration awards and is not designed to super[s]ede an obligation to arbitrate disputes within the scope of the arbitration clause."[11]  *NECA Ins. Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., 595 F. Supp. 955, 958 (S.D.N.Y. 1984).

---

[10] The Court notes, however, that in *Travelers Ins. Co. v. Keeling*, No. 91 CIV. 7753 (JFK), 1993 WL 18909, at *5 (S.D.N.Y. Jan. 19, 1993) *aff'd in part, appeal dismissed in part*, 996 F.2d 1485 (2d Cir. 1993), the court found that the presence of the arbitration clause did not subvert the service of suit provision, under which the insurance underwriter waived its right to removal under the FAA.  The Second Circuit dismissed the underwriter's appeal on the grounds that the lower court's remand order was not appealable.  *Travelers Ins. Co. v. Keeling*, 996 F.2d 1485, 1488 (2d Cir. 1993).  However, it did not rule on the merits of the case.  The result in *Travelers* was later explicitly rejected by another district court, which observed that "[t]he result in *Travelers* stands at odds with the law in the Third and Fifth Circuits, and, at the very least, in tension with other decisions in this district."  *B.D. Cooke & Partners Ltd. v. Certain Underwriters at Lloyd's, London*, 606 F. Supp. 2d 420, 426 (S.D.N.Y. 2009) (listing cases).

[11] N.J. Transit additionally argues that "any interpretation that the only role for the NJ Service of Suit Endorsement is to enforce arbitration award would render the word 'claimed' in the NJ Service of Suit Endorsement superfluous."  Doc. 12 at 14.  N.J. Transit does not explain how such an interpretation would render the service of suit language superfluous.  Indeed, the service of suit clauses in *B.D. Cooke* and *NECA* contained identical language.  *See B.D. Cooke*, 606 F. Supp. 2d at 426; *NECA*, 595 F. Supp. at 957.

N.J. Transit additionally cites the doctrine of *contra proferentem*—the principle that contract ambiguities should be construed against the drafters—to argue that, because Hudson drafted the arbitration and the service of suit endorsements, any ambiguities should be resolved in favor of N.J. Transit.  Doc. 12 at 13.  "[I]f unable to determine the parties' intent based either on the text of an agreement or after evaluating admissible extrinsic evidence, the Court may, in some circumstances, apply the doctrine of *contra proferentem* to construe any ambiguity against the drafter of the contract."  *Rubenstein v. Advanced Equities, Inc.*, No. 13 CIV. 1502 (PGG), 2014 WL 1325738, at *12 (S.D.N.Y. Mar. 31, 2014) (internal citation and quotation marks omitted).  However, the doctrine is only applied as "a matter of last resort."  *Id.*  (internal citation and quotation marks omitted).

To begin with, the arbitration clause states in no uncertain terms that "where the language of this Policy is deemed to be ambiguous or otherwise unclear, policy construction or interpretation *will not be presumed to favor any party*; no liability or burden will be assigned or assumed by the drafting of this Policy."  Lee. Decl., Doc. 4, Ex. A at 44 (emphasis added).  Therefore, the arbitration clause waives the application of *contra proferentem*.  Moreover, the Court need not resort to this doctrine given that any ambiguities are capable of being resolved by reading the two provisions in tandem.  As another court has noted, "the Supreme Court has applied the presumption of enforceability, rather than the rule of *contra proferentem*, when determining questions of arbitrability."  *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 486 n.10 (S.D.N.Y. 2013) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]").  Finally, "*contra proferentem* does not apply where contracts are negotiated by sophisticated parties of

13

equal bargaining power." *Catlin Speciality Ins. Co. v. QA3 Fin. Corp.*, 36 F. Supp. 3d 336, 342 (S.D.N.Y. 2014) (listing cases). Given that N.J. Transit is a sophisticated policyholder that was represented throughout its negotiations by a professional broker, the application of *contra proferentem* is simply not appropriate in this case.

Therefore, the service of suit clause does not preclude Hudson from requiring arbitration of the present dispute.

### C. The Definiteness Doctrine

In a final attempt to escape the reach of the arbitration provision, N.J. Transit argues that it is unenforceable under the definiteness doctrine because it is missing certain key terms. Doc. 12 at 15. N.J. Transit notes that the arbitration endorsement does not state the rules that would govern arbitration and discovery, whether the arbitration will be binding on the parties, or the location or forum for the arbitration. *Id*. It also does not indicate whether litigation can be commenced before the arbitration hearing. *Id*. This argument is without merit.

Courts within this circuit have routinely rejected the argument that the procedural rules governing arbitration constitute essential terms. *See e.g. Hojnowski v. Buffalo Bills, Inc.*, 995 F. Supp. 2d 232, 237 (W.D.N.Y. 2014) (rejecting the plaintiff's argument that arbitration clause in his employment contract was unenforceable because the rules governing arbitration were not included in, or even explicitly referenced by the employment agreement); *Tarulli v. Circuit City Stores, Inc.*, 333 F. Supp. 2d 151, 157-158 (S.D.N.Y. 2004) (concluding that there was no procedural unconscionability barring the enforcement of an arbitration provision where the plaintiff never received a copy of the arbitration rules). The arbitration endorsement states that the parties *shall* appoint an arbitrator jointly. Lee Decl., Doc. 4, Ex. A at 44. Many of the missing details, such as the forum, binding nature, and rules of discovery, will necessarily be established once the parties select an arbitrator.

N.J. Transit's reliance on *Dreyfuss v. eTelecare Global Solutions-US, Inc.*, No. 08 CIV. 1115 (RJS), 2008 WL 4974864 (S.D.N.Y. Nov. 19, 2008) *aff'd sub nom. Dreyfuss v. Etelecare Global Solutions-U.S. Inc.*, 349 F. App'x 551 (2d Cir. 2009) is misplaced.  In *Dreyfuss*, the court held that under the definiteness doctrine, "a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to . . . [i]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *Id*. at *4  (quoting *166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91, 575 N.E.2d 104, 105 (1991)).  However, the lack of definiteness in *Dreyfuss* was due to missing pages.  *Id*. at *6.  Without these undetermined number of missing pages, the court was unable "to determine what in fact the parties have agreed to." *Id.* (internal citation and quotation marks omitted).  The *Dreyfuss* court emphasized that it involved "not missing or vague *terms*, but *missing pages*." *Id*.  That is not the case here.  The arbitration provision is presented in its complete form and unambiguously evinces the parties' intent to arbitrate the dispute at hand.

Ultimately, the absent terms that N.J. Transit cites do not govern what is at issue here: whether N.J. Transit is required to arbitrate its dispute, as opposed to proceeding with its action in New Jersey state court.  The arbitration endorsement is reasonably read as mandating the referral of N.J. Transit's claims to arbitration.

## IV. Conclusion

For the reasons set forth above, Hudson's motion to compel arbitration is GRANTED.

The Clerk of the Court is respectfully directed to close the case.


It is SO ORDERED.


Dated:   June 5, 2015
         New York, New York

                                                        _____
                                                        Edgardo Ramos, U.S.D.J.